**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

METROTOP PLAZA ASSOCIATES,

Plaintiff,

-vs-

UNITED STATES OF AMERICA,

Defendant.

No. 07-811C

(Judge John P. Wiese)

---

**BRIEF ON BEHALF OF PLAINTIFF METROTOP PLAZA ASSOCIATES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

RICHARD L. ZUCKER, ESQ.
LASSER HOCHMAN, L.L.C.
75 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 226-2700
rzucker@lasserhochman.com
Attorneys for Plaintiff Metrotop Plaza Associates

On the Brief:

Richard L. Zucker, Esq.
Bruce H. Snyder, Esq.

## PRELIMINARY STATEMENT

That the defendant United States of America (hereinafter "the Government") would have the effrontery to make the present motion to dismiss is mind-boggling. By letter dated September 1, 2006, Evanthia Campione, a contracting officer for the General Services Administration ("GSA"), issued what purported to be a final decision. Metrotop and the GSA immediately engaged in discussions seeking to have Ms. Campione reconsider her position in an attempt to resolve the dispute. In July of 2007, Mark Johnson, Esq., counsel for the GSA, contacted counsel for Metrotop, and asked that Metrotop not file a complaint on or before September 1, 2007, as it was prepared to do, so that the parties might discuss settlement, and expressly agreed that if the matter could not be resolved by September 5, Metrotop's time to appeal the September 1, 2006 decision would be deemed extended to December 5, 2007. By letter dated August 21, 2007, Ms. Campione submitted a proposal reflecting the result of her reconsideration of the matter, and sought Metrotop's concurrence. Metrotop did not agree to the proposal and duly filed its complaint on November 19, 2007, well within the time frame agreed to by counsel for the GSA, both orally and in writing.

Nevertheless, the Government now comes before this Court and demands that the complaint be dismissed because it was not filed on or before September 1, 2007. In making this outrageous request, the Government insists that the September 1, 2007 date was absolutely jurisdictional, and that Mr. Johnson, the GSA's own attorney, had no authority to request that Metrotop not file a complaint by that date and no authority to agree to an extension of time by which Metrotop might do so. In order to accept this position, the Court must therefore find that Mr. Johnson either: (a) deliberately lied in order to trick Metrotop into giving up its right to appeal the contracting officer's decision, or (b) lacks even the minimal competence to know what the very statutes with which he presumably deals every day provide or authorize. Even more outrageously, the Government implies

that Metrotop, with far less experience with the Contract Dispute Act ("CDA") than Mr. Johnson, was somehow supposed to have figured out that Mr. Johnson was either a liar or an incompetent, and to have filed a complaint by September 1, 2007, notwithstanding what it was led to believe were the GSA's good faith attempts at resolution of this matter.

It is respectfully submitted that the prospect of issuing a decision which endorses such sharp practice by the Government should give this Court pause. Not surprisingly, the Government's motion is without basis since:

- The GSA's reconsideration of its position, following the September 1, 2006 letter, culminating in the contracting officer's letter of August 21, 2007, suspended the finality of the September 1, 2006 decision and, therefore, correspondingly extended the time for filing the complaint.

- The 12-month period set forth in the CDA, at 41 U.S.C. §609(a)(3) (unlike the six-year statute of limitations contained in 28 U.S.C. §2501) is subject to equitable tolling, which the facts of this case mandate.

- The GSA is, in any event, estopped from relying upon the statute of limitations by its actions, which extend well beyond mere silence to active misconduct.

The GSA also moves to dismiss the second count of the supplemental complaint, which seeks to appeal from the contracting officer's denial of the certified claim submitted on October 30, 2007, on the grounds that the contracting officer, for some reason, did not personally receive a copy until December 13, 2007. The Government does not contend that the claim was incorrectly addressed, nor does it dispute that it was never returned and delivered to counsel for plaintiff; indeed, the contracting officer implicitly acknowledges that the claim <u>was</u> received by someone at the agency,

but apparently never reached her desk. The only logical inference, then, is that the letter reached its destination but was then somehow bureaucratically misdirected. As will be seen, such bureaucratic misdirection does not prevent the notice from having been deemed received.

The Government's application should, moreover, be viewed from the perspective of common sense. The contracting officer plainly stated her position on September 1, 2006, as well as her revised position on August 21, 2007. By her own admission she has had the certified claim, simply reiterating the identical position which she has already rejected twice, since December 13, 2007. Nevertheless, she does not indicate that she has the slightest inclination of suddenly changing course and now accepting Metrotop's position. Accordingly, even if this Court were to accept the incredible assertion that both October 30, 2007 claim letters somehow vanished into oblivion without ever reaching the offices of the GSA, rather than simply having been internally misdirected, the result would be the truly pointless exercise of dismissing the second count of the present complaint, allowing the contracting officer another 14 days to do that which she has already done twice before, and then starting these proceedings all over again. Why the Government wishes to waste everyone's time in this matter is nowhere explained.

The present motion to dismiss smacks of bad faith, and is without basis. It should be denied.

## COUNTERSTATEMENT OF FACTS

On or about August 23, 2000, Metrotop and the Government entered into a Lease for Real Property (hereinafter "LRP") with respect to approximately 10,688 BOMA rentable square feet of office space located on part of the first floor of the premises known and designated as 111 Wood Avenue South, Iselin, New Jersey, together with 40 on-site parking spaces, to be used for office and related uses.

Insofar as is relevant to the present motion, paragraph 3.3(e) of the LRP requires the Government to pay increases in real estate taxes over base year taxes on an annual basis following invoicing by the Landlord. Metrotop duly invoiced the Government, pursuant to paragraph 3.3(e) of the LRP, in the amount of $2,087.72 and $18,582.58 for tax increases for 2002 and 2003, respectively, over the 2001 base year, which amounts were duly paid by the Government. By letter dated July 27, 2006, however, the Government advised Metrotop of its position that the base year should not have been 2001, and that the $2,087.72 and $18,582.58 were "paid...in error." Certification of Dinah Hendon in Opposition to Motion to Dismiss First Count of Complaint ("Hendon Cert."), ¶7 and Exh. A.

By letter dated September 1, 2006, Evanthia Campione, contracting officer, advised Metrotop that the Government had reviewed its own claim and had determined it to be valid, and stated, inter alia, that the letter constituted the "final decision of the Contracting Officer", and that Metrotop could either appeal to the agency board of contract appeals or "bring an action directly in the United States Court of Federal Claims...within 12 months of the date you receive this decision" (Hendon Cert., Exh. B). A series of communications followed between counsel for Metrotop and representatives of GSA, including the contracting officer, Ms. Campione, seeking to have GSA

reconsider its position in an attempt to resolve the dispute.

Initially, by letter dated September 14, 2006, Metrotop, through counsel, advised John Sparozic, a GSA financial analyst and the author of the July 27, 2006 letter, of Metrotop's disagreement with the Government's position, and as to the basis of disagreement. Neither Mr. Sparozic nor any representative of the GSA responded to this letter (Hendon Cert., ¶9 & Exh. C).

On or about February 15, 2007, counsel for Metrotop had a telephone conversation with Ms. Campione, the contracting officer, concerning the dispute. As per Ms. Campione's specific request, counsel then faxed to her, among other things, a copy of Metrotop's ledger showing the outstanding real estate taxes for 2004, 2005 and 2006 (Hendon Cert., ¶10 & Exh. D).

After leaving several messages for the contracting officer, counsel for Metrotop had another conversation with her on March 12, 2007. That same day, counsel faxed Ms. Campione a copy of the September 14, 2006 letter to Mr. Sparozic, as she had requested (Hendon Cert., ¶11 & Exh. B).

Ms. Campione did not respond thereafter. After leaving several more messages, counsel for Metrotop faxed Ms. Campione a letter on April 12, 2007 advising that unless she responded, Metrotop would pursue its remedies (Hendon Cert., ¶12 & Exh. F).

On or about May 29, 2007, counsel for Metrotop had a telephone conversation with Mr. Sparozic, who requested copies of all of the documents which had previously been furnished to the contracting officer (including a copy of Mr. Sparozic's own letter of July 26, 2006). These were promptly sent to him (Hendon Cert., ¶13 & Exh. G).

On or about June 6, 2007, counsel for Metrotop had a telephone conversation with Eugene Saxon, who identified himself as another financial analyst with the GSA, and who had indicated that he was reviewing the file and the work of the contracting officer. Mr. Saxon advised that his

supervisor would be looking at the matter, and that a letter would be sent to counsel for Metrotop within the following week (Hendon Cert., ¶14).

No letter was received, however, and counsel's telephone attempts to speak to Mr. Saxon were unsuccessful until July 19, 2007. As confirmed by counsel's letter to Mr. Saxon of that same date, Mr. Saxon had been unable to provide counsel with any information as to the Government's position, but promised to call back that same day. He did not call as promised, and counsel for Metrotop advised by letter that same day that absent a response by July 23, 2007, Metrotop would proceed to protect its rights (Hendon Cert., ¶16 & Exh. H).

Hearing nothing from Mr. Saxon or any other representative of the GSA by Monday, July 23, 2007, Metrotop was prepared to commence its action in the Court of Federal Claims, well before September 1, 2007 (Hendon Cert., ¶18). On or about July 26, 2007, however, Mark S. Johnson, Esq., Assistant Regional Counsel for the GSA, telephoned counsel for Metrotop and advised that the GSA wished to discuss settlement of the dispute. Counsel responded that Metrotop was amenable to such discussions, but in any event intended to file a complaint by September 1, 2007, to protect its rights. Mr. Johnson said that this would not be necessary, and that the GSA would extend Metrotop's time to file a complaint 90 days in order to allow settlement discussions to take place (Hendon Cert., ¶¶18, 19).

By letter dated July 26, 2007, sent by Federal Express to counsel for Metrotop, Mr. Johnson confirmed the conversation, and stated that GSA would transmit a letter to counsel "next week proposing a settlement of the dispute in the above captioned matter." Mr. Johnson expressly stated as follows:

> In accordance with our conversation, <u>I hereby agree, on behalf of GSA, that if we have been unable to</u>

> execute a supplemental lease agreement resolving this matter by September 5, 2007, that the time for Metrotop Plaza Associates to appeal the final contracting officer's decision of Evanthia Campione dated September 1, 2006 shall be deemed extended to December 5, 2007 without any additional action or writing by your client (Hendon Cert., Exh. I; emphasis added).

By letter dated August 21, 2007, and received by Metrotop on August 22, 2007, Ms. Campione, the contracting officer, proposed a resolution of the dispute in a manner that differed substantially from the position she had asserted in her September 1, 2006 letter. The September 1, 2006, letter incorporated by reference the July 27, 2006 letter, and thus took the position that because a parking garage had been constructed in 2003, the base year should not have been 2001, but either 2003 or 2004. The GSA therefore claimed that the payments for increases over the base year in 2002 and 2003 had been erroneous. In the August 21, 2007, letter, however, the contracting officer proposed that the 2001 tax year continue to be utilized as the base year for tax adjustments, subject, however, to a reduction in the occupancy percentage for purposes of the real estate tax adjustment by including the rentable square footage represented by the parking garage. The contracting officer further proposed that the GSA make a single lump sum payment for tax years 2003 through 2006 in the total sum of $7,675.99 (Hendon Cert., Exh. J).

Metroplex did not accept this proposal. Accordingly, on October 30, 2007, Metrotop, through counsel, sent a certified claim to the contracting officer setting forth Metrotop's position that the sum due for tax years 2003 through 2007 was $114,772.34. That letter also addressed and rejected the specific assertions contained in the contracting officer's letter dated August 21, 2007. Certification of Richard L. Zucker in Opposition to Motion to Dismiss Second Count of Complaint ("Zucker Cert."), Exh. B. The claim was sent by both regular mail and certified mail, return receipt

requested, on that date, with sufficient postage, and in two identical envelopes with labels addressed to Ms. Campione at the correct address. Each label had the name and return address of Metrotop's counsel printed on it. These envelopes were hand-delivered to the Post Office in Roseland, New Jersey, together with all other outgoing mail, on October 30, 2007 (Zucker Cert., ¶10 & Exh. B and C).

Neither the envelope and its contents which were sent via regular mail, nor the envelope and its contents which were sent via certified mail, return receipt requested, were returned to counsel (Zucker Cert., ¶11). It has been counsel's experience (of which this Court may take judicial notice) that when regular mail or certified mail is not received by the addressee for any reason, the envelope and its contents are returned to the sender. Thus, although the certified mail receipt card was not returned, the most significant fact is that neither envelope was returned as undelivered or undeliverable (Zucker Cert., ¶12).

On November 19, 2007, Metrotop filed what is now the first count of the present complaint, addressing only the matters set forth in Ms. Campione's September 1, 2006 letter. Metrotop filed the action, even though the additional issues raised by the October 30, 2007 claim were not yet ripe, in order to assure compliance with the time frame to which Mr. Johnson had agreed in his July 26, 2007 letter.

On December 13, 2007, counsel had a conversation with Mark Johnson, Esq., who again identified himself as an attorney with the GSA. During that conversation, counsel inquired as to the Government's position with respect to the October 30, 2007, letter. Mr. Johnson said that he was not familiar with the letter, and asked that counsel send him a copy, which he did by e-mail on December 13, 2007 (Zucker Cert., ¶13 & Exh. B). No decision was rendered within 60 days of

October 30, 2007, and the claim was therefore deemed denied. 41 U.S.C. §605(c)(5). Metrotop filed a supplemental complaint addressed to the issues raised in the claim, pursuant to leave granted, on January 30, 2008.

Interestingly, when plaintiff filed its motion for leave to file and serve the supplemental complaint in January 2008, the Government responded that it had no objection. Nevertheless, the Government now moves to dismiss the second count on the grounds that the contracting officer did not "receive" the claim until December 13, 2007, and that the appeal from denial of that claim was, therefore, premature. The Government must, of course, have been aware of this contention when leave was sought to file the supplemental complaint, and had it simply raised the issue then, Metrotop could have, and would have, waited to file its supplemental complaint until on or after February 14, 2008, and there would be no issue.

In any event, the Government chose instead to allow the supplemental complaint, and to move to dismiss it, wasting the time of all concerned. In her declaration in support of the motion, Ms. Campione states that she personally did not receive the letter addressed to her from Metrotop dated October 30, 2007 until Mr. Johnson provided a copy on December 13, 2007. Her declaration, however, raises far more questions than it answers.

Initially, Ms. Campione only sets forth the manner in which she personally receives mail in her office. There is no discussion or description as to the manner in which mail is initially received at the facility, and as to how it is directed to the intended recipient thereafter. Nor is there any indication as to whether there are procedures in place to make certain that such mail is not misdirected, or as to the effectiveness of those procedures, whatever they are. Plainly, however, in light of the multiple requests by GSA representatives for copies of the same documents which had

previously been furnished to them (see, e.g., Hendon Cert., ¶¶11 and 13), those procedures are far from perfect.

More significantly, Ms. Campione declares that in "December, 2007, GSA learned for the first time that there may be a pending claim which [she] had never received", and that when "we learned of this potential claim, GSA immediately contacted Metrotop and requested a copy of the claim." Campione declaration, ¶¶7,8. Although Ms. Campione does not specify how GSA learned that there "may be a pending claim", there can be no possible explanation other than that the claim had been received by someone at GSA, but for some reason did not reach Ms. Campione's desk. Clearly, if the claim was received by someone somewhere at GSA, the failure to forward it to Ms. Campione was a matter of bureaucratic misadventure, irrelevant to the issue of actual receipt by GSA.

While Ms. Campione states, moreover, that she has "not issued a final decision on the claim presented in the October 30, 2007 letter", she leaves no doubt whatsoever as to what that final decision will be. The GSA's position has consistently been at odds with the position taken by Metrotop in the October 30, 2007 letter, and Ms. Campione does not give any indication that she is likely to experience an epiphany if given another 14 days to mull the matter over. Sending this matter back to her would, therefore, be an exercise of futility.

The Government's position is not well taken, factually, legally, or, for that matter, morally. The present motion must be denied.

## ARGUMENT

## POINT I

## THE COMPLAINT WAS TIMELY FILED AS TO THE GOVERNMENT'S SEPTEMBER 1, 2006, DECISION, AND THE MOTION TO DISMISS THE FIRST COUNT MUST BE DENIED

The Government's contention that its own attorneys have no authority to agree to extend the time for the filing of a complaint pursuant to 41 U.S.C. §609(a)(3) beyond 12 months, but are somehow either ignorant of this fact, or in the practice of granting such extensions for the purpose of tricking adversaries, is difficult to swallow, and this Court need not do so. The Supreme Court has held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States", unless Congress expressly provides or indicates otherwise, Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96 (1990), and that such tolling is warranted "where the complainant has been induced or tricked by his adversary's conduct into allowing the filing deadline to pass." Id., at 96. While the Supreme Court recently held in John R. Sand & Gravel Co. v. United States, ___ U.S. ___, 128 S. Ct. 750 (2008), that 28 U.S.C. §2501, a separate statute, does not allow for such equitable tolling, the Court has never so held with respect to the 12-month time limitation set forth in 41 U.S.C. §609(a)(3). Nor has any case been cited for the proposition that the time limitations in 41 U.S.C. §609(a)(3) are anything more than a standard statute of limitations which can be waived, or which can be subject to equitable tolling. The Government's motion must, therefore, be denied.

As will be seen, however, it is unnecessary for the Court even to reach this issue since the GSA's continued consideration of the issues raised in its September 1, 2006 letter, culminating in a revised position asserted on August 21, 2007, suspended the finality of the earlier letter. The

present complaint was, therefore, timely filed without the need to resort to equitable tolling.

### A. The finality of the September 1, 2006, determination was suspended until at least August 21, 2007

41 U.S.C. §609(a)(3) provides that any action under paragraph (1) or (2) "shall be filed within 12 months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim..." Accordingly, before the Court need even consider whether this 12-month period is subject to equitable tolling, the Court must first determine when in fact the 12 months began to run. Since it is the law of this Court that a contracting officer's continued review of the merits of his or her decision suspends the finality thereof, the 12 months did not begin to run until at least August 21, 2007, when the results of the contracting officer's reconsideration were communicated. The present complaint, filed November 19, 2007, was, therefore, timely without the need for any equitable tolling.

Strongly analogous to the present case, and dispositive here, is Arono, Inc. v. United States, 49 Fed. Cl. 544 (Fed. Cl. 2001). Like Metrotop, Arono was a landlord pursuant to a lease with the General Services Association, in this case, for the Social Security Administration ("SSA"). On February 3, 1997, the contracting officer sent a letter indicating that the Government intended to terminate the lease for default, on grounds of constructive eviction, without financial compensation to Arono. Id., at 545. As here, the letter concluded by stating that it was the contracting officer's final decision, and advising Arono that if it wished to appeal it must do so to the Board of Contract Appeals within 90 days, or to the Court of Federal Claims within 12 months. Id.

What happened thereafter is remarkably similar to what happened here. On February 7, 1997, Arono's counsel sent a letter to the contracting officer challenging the Government's default termination and disputing its claims of constructive eviction. He also invited the Government to

discuss the matter further. Id. There followed a series of correspondence and communications between Arono's counsel and the contracting officer or agency counsel, including settlement offers by the Government. Id., at 546-47.[1] Ultimately, on January12, 1998, the contracting officer sent a letter which reaffirmed the February 3, 1997 final decision. Id., at 547. Arono filed its complaint on September 3, 1998, and, as here, the Government moved to dismiss on the grounds that the complaint had not been filed within 12 months of the February 3, 1997 final decision. Id., at 547.

The Court denied the motion, holding that the contracting officer "recognized and reviewed Arono's request for reconsideration of the default termination decision thus suspending the finality of the contracting officer's February 3, 1997 decision." Id., at 549. The Court stated as follows:

> ...It is well-established that "an administrative agency may reconsider its own decisions."...Where a plaintiff timely submits a request for reconsideration, the time for appeal under the CDA does not commence until the disposition of the request for reconsideration because "such a request suspends the finality of the decision pending a ruling on the application..." Id., at 549 (citations omitted).

The Court distinguished Educators Assocs., Inc. v. United States, 41 Fed. Cl. 811 (Ct. Fed. Cl. 1998), noting that in that case, there was no evidence that the contracting officer had ever reviewed the plaintiff's request for reconsideration before simply issuing a later letter reaffirming the original decision. "Thus, the pertinent proposition of *Educators* with respect to the present case is that a reaffirmation of a final decision does not, *per se*, constitute reconsideration of that decision. Instead, it is the amount of time, if any, a contracting officer spends reviewing a plaintiff's request for reconsideration that suspends the finality of the decision regardless of whether that decision is

---

[1]Unlike the present case, however, no attorney for the Government ever expressly agreed to extend the time for the filing of a complaint while settlement discussions were proceeding.

ultimately reconsidered or reversed." Id., at 550.

Noting that the contracting officer had stated a willingness to consider "an amiable resolution to this problem", id., at 551, the Court stated as follows:

> Because the resolution of Arono's anticipatory breach/rent claim is intertwined with its challenge to the government's default termination decision and its demand for reconsideration of that final decision, the court finds that although the CO did not explicitly refer to her February 3, 1997 final decision in the October 27, 1997 letter, her acknowledgment that she wanted to resolve the buyout issue, i.e., rent claim, demonstrates that not only did the contracting officer acknowledge Arono's request for reconsideration of the termination for default, but also that the CO was willing to review Arono's request and, in fact, was in the process of reviewing the request.
>
> Consequently, it is of little moment that the contracting officer's January 12, 1998 letter to Arono ultimately reaffirmed the February 3, 1997 final decision in stating that rent was terminated effective November 16, 1997, based upon the contracting officer's February 3, 1997 decision. As stated, *supra,* it is irrelevant whether the contracting officer ultimately reverses or affirms a final decision; it is the time spent reviewing the request for reconsideration that suspends the finality of a final decision. ...As such, this court finds that inasmuch as the contracting officer's October 27, 1997 letter shows that the contracting officer spent time reviewing Arono's request for reconsideration, the finality of the February 3, 1997 decision was suspended until the disposition of this request. Id., at 552 (citations omitted).

Since Arono's complaint was filed within the 12-month period following the contracting officer's January 12, 1998 letter, it was timely, and the Court was not required to "reach the inquiry of whether the government's actions equitably tolled the statute of limitations under the CDA." Id.,

at 552.

In reaching this determination, the Arono Court relied, among other authorities, upon Vepco of Sarasota, Inc. v. United States, 26 Cl. Ct. 639 (Cl. Ct. 1992). In Vepco, the Government (in this case the United States Postal Service) had, on February 17, 1989, issued two separate decisions described as final, denying the plaintiff contractor compensation for removal of certain additional trees, and for providing electrical service for two wells. Plaintiff contended that upon receipt of these letters, he had been orally advised by the contracting officer and the contracting officer's representative that the claims would be reserved and reconsidered after a final accounting. The postal service subsequently requested that its architect and engineer review the matter, ultimately resulting in a letter dated November 14, 1990, from the contracting officer, which indicated that no new evidence had been presented, and that the agency's "final decisions, as explained to you by letter on February 17, 1989 (both topics), which included your appeal rights, does not change." 26 Cl. Ct. at 643. Plaintiff filed its complaint October 22, 1991. Id., at 644.

The Government moved to dismiss on the ground that the complaint had not been timely filed. The Court found that, at the very least, a factual dispute had been presented as to whether the finality of the decision had been suspended pending reconsideration:

> "[U]nless there is legislation to the contrary it is the inherent right of every tribunal to reconsider its own decisions within a short period after the making of the decision and before an appeal has been taken..." *Dayley v. United States*, 169 Ct. Cl. 305, 308 (1965) (citations omitted). "'[T]he period for appeal or review [under the CDA] does not begin to run until the disposition of a timely request for reconsideration, rehearing, or new trial, because such a request suspends the finality of the decision pending a ruling on the application...'" *Precision Piping v. United States*, 230 Ct. Cl. 741, 743 (1982) (quoting *Dayley*,

169 Ct. Cl. at 309). Id., 645.

The Court then stated that a "contracting officer's agreement to reconsider his final decisions would suspend the finality of the decisions if the request for reconsideration were made in a timely manner", and that regardless of the fact that reconsideration was ultimately denied, this was "of little moment, in that time spent reviewing a request for reconsideration would suspend the finality of the decisions regardless of whether the contracting officer ultimately reconsidered the decisions." Id., at 646.

The record here, like the record in Arono, plainly establishes that a timely request for reconsideration was made, and that the contracting officer in fact engaged in such reconsideration. Counsel for Metrotop wrote to Mr. Sparozic on September 14, 2006, only two weeks after the September 1, 2006, letter, and engaged in telephone conversations with the contracting officer herself on February 15, 2007 and March 12, 2007. At the contracting officer's specific request, counsel for Metrotop forwarded copies of documents and copies of the earlier September 14, 2006 letter to Mr. Sparozic. Counsel for Metrotop was thereupon contacted by John Sparozic on or about May 29, 2007, requesting information, and by Eugene Saxon, on or about June 6, 2007 and July 19, 2007, all with the specific and express purpose of reconsidering the GSA's position and attempting to resolve the dispute. In his letter of July 26, 2007, moreover, Mr. Johnson, Assistant Regional Counsel for the GSA, stated that the GSA would "transmit a letter to you next week proposing a settlement of the dispute in the above captioned matter", and further indicating an attempt "to execute a supplemental lease agreement resolving this matter by September 5, 2007." Indeed, if the Government is correct that Mr. Johnson had no authority to extend the time for filing a complaint, the only explanation for his agreement to such an extension (other than bad faith or incompetence)

would be his acknowledgment that the finality of the September 1, 2006 letter had been suspended pending such reconsideration.

Most significantly, the contracting officer herself wrote to Metrotop on August 21, 2007, setting forth a proposal which was plainly at variance with the September 1, 2006 letter. This case is, then, if anything, far stronger than either Vepco or Arono, since the contracting officer here not only reconsidered her previous position but in fact subsequently changed that position.

The finality of the September 1, 2006 decision was suspended while the GSA reconsidered its position in an attempt to resolve the matter. Those attempts continued at least through August 21, 2007, and the complaint filed November 19, 2007, was, therefore, timely. The Government's motion to dismiss must be denied.

**B. If applicable, the statute of limitations should be equitably tolled**

As previously noted, the statute of limitations is an affirmative defense required to be pleaded in an answer. R.C.F.C. 8(c). A statute of limitations defense is, therefore, ordinarily subject to waiver, estoppel, and equitable tolling. Zipes v. Trans World Airlines, Inc. Indep. Fed. of Flight Attendants, 455 U.S. 385, 393 (1982); Cada v. Baxter Health Care Corp., 920 F.2d 446, 450-51 (7th Cir. 1990), cert. den. 501 U.S. 1261 (1991). In Irwin v. Department of Veterans Affairs, supra, the Supreme Court expressly held that as a general proposition, statutes of limitations governing suits against the United States are subject to the same equitable considerations, absent an express congressional indication to the contrary:

> A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'...Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any,

> broadening of the congressional waiver. Such a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation. We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. 498 U.S. at 95-96 (emphasis added).

The Supreme Court therefore held equitable tolling available in a suit against the United States alleging employment discrimination in violation of Title VIII of the Civil Rights Act of 1964, although the Court further found that the facts in the case before it did not establish a basis for such equitable tolling.

Since Irwin was decided, the Supreme Court has cited it on multiple occasions for its holding that "limitations principles should generally apply to the Government 'in the same way that' they apply to private parties." See, e.g., Scarborough v. Principi, 541 U.S. 401, 420-21 (2004); Franconia Associates v. United States, 536 U.S. 129, 145 (2002); Raygor v. Regions of the Univ. of Minn., 534 U.S. 533, 543 (2002); United States v. Brockamp, 519 U.S. 347, 349-50 (1996). Significantly, the Court in Brockamp gave 42 U.S.C. §2000e-16(c) as one example of a statute utilizing "fairly simple" limitations language, which can be "plausibly read as containing an implied 'equitable tolling' exception." That statute requires a suit for employment discrimination to be filed "[w]ithin 90 days of receipt of notice of final [EEOC] action..." -- language virtually identical to that contained in 41 U.S.C. §609(a)(3) ("any action under paragraph (1) or (2) shall be filed within 12 months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim..."). See 519 U.S. at 350.

As the Court in Irwin also stated, there are circumstances in which Congress can "provide otherwise", rendering the time limits of the statutes as "more absolute." Irwin, supra, 498 U.S. at

96; John R. Sand & Gravel Co. v. United States, ___ U.S. ___, 128 S. Ct. 750, 753 (2008). In John R. Sand & Gravel Co., the Court observed that it had sometimes referred to such absolute time limits as "jurisdictional" as a matter of "convenient shorthand." Id., at 753. The Court found that one such "more absolute" time limit was the six-year statute of limitations for bringing claims against the United States pursuant to 28 U.S.C. §2501 -- an entirely different statute, contained in a different title, from the CDA. The Court emphasized, as providing the underpinning of its decision, that it had held that this specific six-year statute of limitations was not subject to equitable tolling in Kendall v. United States, 107 U.S. 123 (1883), Finn v. United States, 123 U.S. 227 (1887), and a series of cases decided thereafter. 128 S. Ct. at 754. The Court flatly stated that the statute at issue in Irwin, "while similar to the present statute in language, is unlike the present statute in the key respect that the Court had not previously provided a definitive interpretation." Id., at 755. While acknowledging, moreover, the logic of the argument that Irwin called for the Court to now reject or overturn Kendall, Finn and the other cases as having become "anomolous", "[b]asic principles of *stare decisis*" required rejection of the contention. 128 S. Ct. at 756. The Court noted that *stare decisis* in respect to statutory interpretation has "special force" since "Congress remains free to alter what we have done", and that by its silence Congress had "long acquiesced in the interpretation we have given." Id., at 756-57.

Subsequent Federal Court decisions have recognized that the John R. Sand & Gravel decision applied to that particular statute, and that particular statute alone, without changing the law applicable to statutes of limitations generally, including the statutes of limitations relating to actions against the Government generally. Thus, in holding that the one-year limitations period for bringing a habeas corpus petition under the Anti-Terrorism and Effective Death Penalty Act of 1996

("AEDPA") is subject to equitable tolling, the Second Circuit, in Diaz v. Kelly, 515 F.3d 149 (2d Cir. 2008), said:

> The Supreme Court's recent decision in *John R. Sand & Gravel Co. v. United States*...confirms our view. The Court there noted that most limitations periods are non-jurisdictional affirmative defenses and are subject to equitable tolling, *see id.* at 753-54, and viewed the [six-year] limitations period governing suits against the United States in the Court of Federal Claims as jurisdictional only because a long line of prior decisions had so held and were entitled to adherence under principles of *stare decisis*, see id. at 756. 515 F.3d at 153-54.

Similarly, the Court in Boothe v. Quarterman, 2008 WL 1771919 (S.D. Tex. 2008) allowed equitable tolling with respect to the same one-year limitations period contained in the AEDPA, noting that John R. Sand & Gravel addressed "a limitations period that has been considered jurisdictional since the year 1883"; that the Court in that case had "explained that most statutes of limitations are non-jurisdictional; they must be raised as an affirmative defense, and are subject to equitable tolling"; and that John R. Sand & Gravel and other recent decisions "*discuss* the differences between jurisdictional and non-jurisdictional statutes of limitations, but do not invite lower courts to reconsider whether any particular limitations period is jurisdictional." Id., at *16 (emphasis in original).

The Court in Baranowski v. Waters, 2008 WL 728366 (W.D. Pa. 2008) likewise noted the general applicability of F.R.C.P. 8(c), which is virtually identical to R.C.F.C. 8(c), such that a statute of limitations generally "remains an *affirmative defense* rather than a jurisdictional requirement" (emphasis in original). That Court then cited John R. Sand & Gravel Co. for the proposition that Congress "has the authority to make a particular statute of limitations jurisdictional", but that in a

case which does not arise under such a statute, "the statute of limitations at issue is subject to waiver, and this Court is not free to disregard an intelligent waiver of the issue." Id., at *4.

The Government cites no case for the proposition that the CDA, 42 U.S.C. §609(a)(3), contains an "absolute" statute of limitations not subject to the doctrine of equitable tolling. Although several courts have addressed this issue, they have found it unnecessary to reach it, either because, as in Arono, supra, the finality of the contracting officer's decision was deemed suspended, or because the circumstances would not have warranted equitable tolling even if available. See Bonneville Assoc., Ltd. Partnership v. Barram, 165 F.3d 1360, 1365-66 (3d Cir. 1999) ("[w]hat happened here falls far short of the situations in which equitable tolling has been applied"); Janicki Logging Co. v. United States, 36 Fed. Cl. 338, 342-43 (Ct. Fed. Cl. 1996), aff'd. 124 F.3d 226 (Fed. Cir. 1997) (table). Indeed, the Federal Circuit in that case, in affirming dismissal, clearly assumed that in light of Irwin, equitable tolling would apply to the 12-month statute of limitations in 42 U.S.C. §609(a)(3), but held that on the facts before it, "the untimeliness of Janicki's present contract claim is not saved by the doctrine of equitable tolling." 124 F.3d at 226, *1.

Since the Court in John R. Sand & Gravel did not suggest that Irwin and its progeny were no longer good law, but rather, simply that those principles did not apply to a specific statute of limitations which had been held to be jurisdictional since 1883, this Court must therefore find that the 12-month limitation in 42 U.S.C. §609(a)(3) is subject to equitable tolling. Certainly, the Government has produced not a shred of evidence or legislative history that would rebut the presumption that equitable tolling applies. This being so, the sole question is whether equitable tolling should extend the time for filing the complaint, to the extent necessary, in the present case. Plainly it should.

As stated in Irwin, equitable tolling is allowed " where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 498 U.S. at 96. See also Bailey v. West, 160 F.3d 1360, 1365 (Fed. Cir. 1998) (equitable tolling allowed, pursuant to Irwin, with respect to 120-day time frame for filing an appeal from the decision of the Board of Veterans Appeals where plaintiff "was misled by the conduct of its adversary into allowing the filing deadline to pass"); Bonneville Assoc. Limited Partnership v. Barram, supra, 165 F.3d at 1365 (equitable tolling available where parties have been "misled about the running of a limitations period, whether by an adversary's actions...[or] by a government official's advice upon which they reasonably relied", quoting Bowden v. United States, 106 F.3d 433, 438 (D.C. Cir. 1997)). See also International Air Response v. United States, 49 Fed. Cl. 509, 514-515 (Ct. Fed. Cl. 2001), rev'd. on other grounds, 302 F.3d 1363 (Fed. Cir. 2002) (court "is concerned when the Government whipsaws a plaintiff", and when "basic notions of fair play are offended"). Metrotop was fully prepared to file its complaint on or before September 1, 2007. Before Metrotop had done so, the attorney for the Government reached out to counsel, well within the original 12-month period, and specifically asked that Metrotop not file an appeal so that settlement could be pursued, and agreed, both orally and in writing, to a 90-day extension of time in which to file the complaint if settlement could not be achieved. But for the conduct of the Government's attorney, there can be no question whatsoever that the complaint would have been filed prior to September 1, 2007. Surely, if this is not an appropriate case for the application of the principle of equitable tolling, then no such case exists, and the entire concept is without meaning.

The 12-month limitation of 41 U.S.C. §609(a)(3) is no different from the myriad of other statutory provisions, allowing suits against the Government, to which equitable tolling applies.

Equitable tolling is, therefore, appropriate and plainly warranted here. The Government's motion to dismiss must be denied.

**C. The Government is equitably estopped from asserting the statute of limitations**

Equitable estoppel can be asserted against the Government under appropriate circumstances. Initially, the elements of equitable estoppel generally must be satisfied: (1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct would be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct. When a party seeks to invoke equitable estoppel against the Government, a party must additionally show "that the agency engaged in 'affirmative conduct going beyond mere negligence' and that 'the public's interest will not suffer undue damage' as a result of the application of this doctrine." Lehman v. United States, 154 F.3d 1010, 1016-17 (9th Cir. 1998).

As the Court stated in Muniz-Rivera v. United States, 204 F. Supp.2d 305, 317 (D.P.R. 2002), aff'd. 326 F.3d 8 (1st Cir. 2003):

> Under equitable estoppel, the Government is estopped from raising a statute of limitations defense when the plaintiff's untimeliness is due to his justified reliance on the Government's false or misleading statements or conduct. ...For there to be equitable estoppel, there must be some affirmative government misconduct. ...The defendant must have acted with an improper purpose, or it must have had constructive knowledge of the deceptive nature of its conduct. ...(citations omitted).

Applying these principles, courts have estopped the Government, under appropriate circumstances, from asserting a limitations defense. Thus, in ALLTEL Information Services, Inc. v. FDIC, 970 F. Supp. 775 (C.D. Cal. 1997), aff'd., 194 F.3d 1036 (9th Cir. 1999), the applicable

statute provided that claims against failed banking institutions were to be filed with the FDIC, and allowed the FDIC 180 days from the date the claim was filed in which to rule, at which point the claims would be deemed disallowed. 12 U.S.C. §1821(d)(5)(A). The claimant then had 60 days from the earlier of either the end of the FDIC's determination period or the date of notice of disallowance in which to seek judicial review of the denial of its claim. 12 U.S.C. §821(d)(6). The plaintiff submitted its claims, and the FDIC issued a notice of partial allowance/disallowance of claims stating, incorrectly, that in order to obtain review, a party must file a lawsuit "within SIXTY (60) days of the date or postmark, which is later, of this letter." 970 F. Supp. at 777-78. Plaintiff filed its action on July 26, 1996, less than 60 days after the date of the FDIC's notice of disallowance, but more than 60 days from the end of the 180-day period mandated by the statute. Although the action was thus untimely, the Court held that in light of its incorrect notice, the FDIC was "estopped from arguing that the statute of limitations bars ALLTEL's claims." Id., at 778.

Similarly, in McAllister v. FDIC, 87 F.3d 762 (5th Cir. 1996), the plaintiffs, former executive officers of a failed savings association, filed proofs of claims with the RTC for their retirement plan benefits, as directed by the RTC, on February 25, 1992. On March 22, 1993, the RTC issued "Receivers' Certificates" allowing plaintiffs' claims in full, but treating those claims as unsecured, and subject to the prior claims of depositors. Id., at 764. RTC officials told plaintiffs that there were only approximately $100,000 in claims against the trust, compared to trust assets of several million dollars, such that plaintiffs reasonably believed their claims would be paid in full. Id.

In March of 1994, plaintiffs learned that there would not be enough money to pay the RTC in full and that their claims would therefore not be paid. Plaintiffs filed new proofs of claims on March 21, 1994, which the RTC refused to consider. Plaintiffs then filed suit against the RTC on

November 19, 1994.

Among other arguments, the RTC claimed that plaintiffs' time in which to file their appeals began to run no later than the date the original Receivers' Certificates were issued and they were advised that their claims would be treated as unsecured. The Court rejected this contention, stating that plaintiffs' "claims are still timely, however, because the running of the 60 day period was tolled by the RTC's misrepresentations." Id., at 767. "Under the doctrine of equitable estoppel, a defendant is estopped from asserting a limitations defense when its conduct induced or tricked a plaintiff into allowing a filing deadline to pass." Id. The Court stated that the RTC's "false assertions that the plaintiffs would be paid in full induced them not to file suit within the 60 day period following the issuance of the Receiver's Certificates", and that because of "these false representations, the RTC is equitably estopped from raising limitations as a defense." Id.

Finally, in Winter v. United States, 93 Fed. Appx. 145 (9th Cir. 2004), the Ninth Circuit reversed the District Court's dismissal of plaintiff's medical malpractice action because he had not filed it within six months of January 31, 1996, the date on which the Department of Veterans Affairs had sent plaintiff a letter by certified mail denying his request for reconsideration, as required by statute. Although there was evidence that the letter never arrived, the Court found it unnecessary to resolve this dispute, stating instead that the "government is equitably estopped from asserting a statute of limitations defense against Winter because the VA engaged in a pervasive pattern of affirmative misconduct that began in April 1996, well within the six-month statutory period that the government argues is applicable." Id., at 146. More particularly, in April 1996, a senior attorney had advised plaintiff that settlement was still actively being considered, while concealing from him the fact that the General Counsel's office had sent him a letter several months earlier denying his

reconsideration request. In September 1996, the same attorney informed plaintiff that the VA had earlier denied reconsideration, and, when plaintiff replied that he had never received the letter, the VA General Counsel's office purported to launch an investigation to determine what had happened to it. Id. Through December of 1996, the VA continued to tell plaintiff that an investigation was still pending, and that settlement was still possible. As the Court stated, in "reliance on his communications with the VA, Winter refrained from filing suit. This was the intended effect, for it is apparent that the conduct of these government lawyers was part of a coordinated effort to buy time while the agency determined how to proceed." Id., at 146-47.

On January 17, 1997, the VA sent plaintiff a second denial letter and indicated that he could file suit no later than six months after the date of the mailing of that notice. When plaintiff filed suit, however, the Government took the position that the suit was time barred because not filed within six months of the earlier denial. The Court found that the second letter "marked the culmination of a pervasive pattern of affirmative misrepresentation and concealment that was deliberately perpetrated by government attorneys"; that holding the VA accountable for its affirmative misconduct "will also avoid a 'serious injustice' and will not 'unduly harm the public interest", and that the District Court had abused its discretion by failing to apply equitable estoppel. Id., at 147.

Estoppel is plainly warranted here. The Government's attorney, Mr. Johnson, engaged in affirmative misconduct by contacting counsel for Metrotop, advising that the Government wished to continue pursuing settlement negotiations, and inducing Metrotop not to file a timely appeal by expressly agreeing, orally and in writing, to an extension of time to December 5, 2007. If, as the Government now contends, Mr. Johnson had no legal authority to agree to such an extension, he was either actually aware of that fact or, at the very least, on constructive notice of it, and his actions

therefore constituted affirmative misconduct on the part of the Government. Estopping the Government from now claiming the statute of limitations would, moreover, avoid a "serious injustice" and would certainly not "unduly harm the public interest." The Government is estopped from relying upon the statute of limitations in this case, and this Court should so hold.

## POINT II

## PLAINTIFF'S CLAIM WAS FILED MORE THAN 60 DAYS FOLLOWING RECEIPT BY THE CONTRACTING OFFICER AND THE MOTION TO DISMISS THE SECOND COUNT OF THE COMPLAINT MUST BE DENIED

The Government argues that if Metrotop's claim was not received by the contracting officer until December 13, 2007, the supplemental complaint, filed January 30, 2008, was filed approximately two weeks prior than the date upon which the claim was deemed denied pursuant to 41 U.S.C. §605(c)(5). The Government goes on to assert that the claim in fact did not physically reach Ms. Campione personally until December 13, and that the supplemental complaint must therefore be dismissed without prejudice and then, presumably, re-filed two weeks later. Why the Government did not assert this position when Metrotop moved to file the supplemental complaint, on notice to the Government, in January 2008 is, unfortunately, not explained.

In any event, the Government's belated motion is without merit. The fact that a properly certified claim, correctly addressed and duly mailed on October 30, 2007, may not have actually reached the contracting officer until 45 days later does not establish that the supplemental complaint was premature.

The law of course recognizes the presumption that an item properly addressed, and deposited in the mail with sufficient postage, was received by the addressee. Gonzalez v. Attorney General of the U.S., 506 F.3d 274, 278 (3d Cir. 2007); In re Cendant Corp. Prize Litigation, 311 F.3d 298, 304 (3d Cir. 2002). In the instant case, counsel has certified that two copies of the October 30, 2007, letter were sent, by regular mail and certified mail, return receipt requested, respectively, in two separate envelopes, each properly addressed, with the correct postage on October 30, 2007. Counsel

has further certified that although each envelope bore the return address of plaintiff's counsel, neither was returned as undelivered or undeliverable. The presumption must, therefore, be that the claim was received, shortly after October 30, 2007, and was, therefore, deemed denied well prior to January 30, 2008, when the supplemental complaint was filed. The supplemental complaint was, therefore, not premature, and dismissal must be denied.

The Government seeks to overcome this presumption based solely upon the contracting officer's declaration that she personally did not receive the letter until a copy was e-mailed to her by the ubiquitous Mr. Johnson on December 13, 2007. The mere statement that Ms. Campione did not physically receive the letter is, however, insufficient to rebut the presumption that it was properly submitted and received, especially since it is implicit in paragraph 7 of Ms. Campione's declaration that the claim reached someone at the GSA, even if, for some reason, it never got as far as Ms. Campione's desk. The inference of receipt is even stronger given that there is no declaration from anyone at the location in question as to how mail is ordinarily received and distributed; as to what procedures are in place to make certain mail is not improperly directed, and as to the efficacy of those procedures over the years. As previously noted, moreover, the very fact that the contracting officer and other GSA representatives repeatedly requested that counsel forward to them copies of correspondence and documents which had already been furnished suggests that these procedures are not foolproof.

A claim which is properly mailed and addressed, and received at the correct location, meets the CDA's submission requirement regardless of whether or not the claim reaches the contracting officer personally. Wallace O'Connor International, Ltd. v. United States, 23 Cl. Ct. 754, 758 (Cl. Ct. 1991). "To hold otherwise would allocate the risk of interagency misdirection of mail on the

contractor and would require contractors to physically deliver their claims to the CO to ensure compliance with the CDA." Id.

This Court has endorsed this holding on multiple occasions. Thus, for example, in Flying Horse v. United States, 49 Fed. Cl. 419 (Ct. Fed. Cl. 2001), the claimants submitted a claim letter to the regional contracting officer for the Bureau of Indian Affairs at the GPRO (Great Plains Regional Office) in Aberdeen, South Dakota. 49 Fed. Cl. at 427. The Government contended that the individual in question was not the actual contracting officer and, therefore, that the subsequently filed complaint should be dismissed. The Court gave short shrift to this contention:

> ...The court rejects defendant's contention that the claims letter was sent to the wrong contracting officer. Defendant has not stated anywhere in its pleadings who was the proper contracting officer or where plaintiffs should have sent their claims letter. Defendant only states that Mr. Zephier is not the correct contracting officer in a hospitable attempt to find refuge in bureaucracy. ...As plaintiffs have averred that Mr. Zephier is the proper contracting officer and defendant has submitted no evidence which would lead us to doubt this assumption, the court holds that, in construing the pleadings in the most favorable light to plaintiffs on this issue, Mr. Zephier was the proper contracting officer. Id., at 428.

More significantly, the Court went on to hold that if Mr. Zephier was, "in fact, not the correct contracting officer,...defendant had ample opportunity to remedy such situation." Id. The Court said:

> Those in charge of administering contracts at the GPRO could have easily sent plaintiffs' claims letter to the correct contracting officer if, indeed, it was addressed erroneously to Mr. Zephier. It is plaintiffs here, who are on the non-movant side of this motion to dismiss, who deservedly receive the court's 'benefit

of the doubt' on this issue. Id., at 428-29.

Perhaps most significantly for the present case, the Court rejected the Government's contention that Mr. Zephier himself had "received the claims letter untimely", stating that defendant was attempting "to place the onus on plaintiffs for Mr. Zephier's failure to receive the letter timely based on the GPRO's mismanaged administrative procedures." Id., at 429. Certainly in light of all of the facts and circumstances here, including the proper mailing of the notices to the correct address with proper postage; their non-return, and Ms. Campione's oblique reference to the GSA somehow learning "of the pending claim" in early December 2007, this appears to be precisely what the Government is seeking to do here.

Wallace O'Connor was again followed by this Court in United Partition Systems, Inc. v. United States, 59 Fed. Cl. 627 (Fed. Cl. 2004). In that case the plaintiff had submitted its claim to the Air Force's contracting officer who purported to render a decision, but who, as it eventually turned out, was not the contracting officer with actual authority to do so. An action was filed May 20, 2003, based upon the original denial. In the meantime, the claim finally reached the correct officer on June 3, 2003, and the Government claimed, as it does here, that the action which had been filed was premature. As here, the Government argued that "the 60-day period in which the contracting officer must make a final decision begins only after the claim's *receipt* by the contracting officer and that GSA's contracting officer's actual receipt is the critical event in this case." Id., at 637 (emphasis in original).

The Court rejected this contention, stating that "to commence the CDA process, a contractor may at most be held responsible for fulfilling the tasks required to commit its claim to the government and to request that a decision be rendered on the claim; subsequent responsibility for

processing the claim then resides with the government." Id., at 637-38. Plaintiff had delivered its claim to the particular Air Force contracting officer who had been assigned responsibility, and that officer was then "under an affirmative obligation based on the contract and applicable regulations to determine who had authority to render a final decision and to handle the claim accordingly." Id., at 638. The Court found that the Air Force officer's "erroneous decision that he was authorized to issue a decision...and his concomitant failure to forward the claim to GSA's contracting officer cannot be held against United Partition." Id., at 639-40. As the Court stated:

> "Where a government official has some authority and responsibility, his failure to handle a claim properly, even when the result of a genuine error, should not preclude a contractor from seeking judicial relief until the government eventually delivers the contractor's claim to another appropriate officer. To hold otherwise would allow the government to 'find refuge in bureaucracy', *Flying Horse*, 49 Fed. Cl. at 428, and undermine the goal of timely resolution of claims embodied in the CDA, 41 U.S.C. §605(c). Id., at 640.

There is a presumption that Metrotop's properly addressed and mailed claim was received. The mere fact that the individual to whom the claim letters were addressed contends that they did not physically reach her desk does not establish that they were not received, and does not rebut the presumption -- especially where, as here, neither letter was ever returned. Giving plaintiff the benefit of all reasonable inferences, as the Court must on the Government's motion to dismiss, the Court must conclude that the Government has failed to establish that the claim was not "received", within the meaning and intent of the CDA as construed by the Courts, by Ms. Campione shortly after October 30, 2007. The Government's motion to dismiss the second count of the complaint must, therefore, be denied.

**CONCLUSION**

For all of the reasons previously set forth, therefore, plaintiff Metrotop Plaza Associates respectfully urges that the Government's motion to dismiss be denied in its entirety.

LASSER HOCHMAN, L.L.C.
Attorneys for Plaintiff Metrotop Plaza Associates

By: /s/ Richard L. Zucker
RICHARD L. ZUCKER

Dated: May 21, 2008