# In the United States Court of Federal Claims

No. 07-811C
Filed: July 24, 2008

| | | |
|---|---|---|
| METROTOP PLAZA ASSOCIATES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Contract Disputes Act—Timeliness of a Claim: (i) For statute of limitations purposes, the finality of a contracting officer's decision is suspended during the period when the contracting officer is reconsidering the decision, whether or not a formal motion for reconsideration has been filed. (ii) The date of mailing of a claim to the contracting officer does not establish the starting date for the 60-day period required for a contracting officer's deemed decision in the absence of facts confirming the contracting agency's receipt of the claim. |

Richard L. Zucker, Lasser Hochman, L.L.C., Roseland, New Jersey, counsel for plaintiff.

Dawn E. Goodman, with whom were Acting Assistant Attorney General Gregory G. Katsas, Director Jeanne E. Davidson, and Assistant Director Patricia M. McCarthy, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, counsel for defendant.

**OPINION**

WIESE, Judge.

This case comes before the court on defendant's motion to dismiss the complaint for lack of jurisdiction. Defendant maintains that plaintiff's claims challenging the decisions of the contracting officer were filed outside the limitations periods identified in the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–613 (2000), and therefore may not be heard by this court. For the reasons set forth below, defendant's motion is granted in part and denied in part.

## FACTS

Plaintiff, Metrotop Plaza Associates, entered into a rental agreement with the General Services Administration ("GSA") on August 23, 2000, for the lease of office space in Iselin, New Jersey. Pursuant to the terms of the lease, GSA was obligated to pay plaintiff a proportionate share of any increase in real estate taxes imposed by the local taxing authority. In accordance with the agreement, plaintiff provided GSA with an invoice identifying GSA's proportionate share of tax increases as $2,087.72 for tax year 2002 and $18,582.58 for tax year 2003.

GSA paid the invoiced amounts but later concluded, based on a government audit of the lease, that the base year used to calculate the tax increases was incorrect. By letter dated July 27, 2006, GSA thus notified plaintiff that it had paid the $2,087.72 and $18,582.58 amounts in error and requested that plaintiff contact GSA within 30 days to discuss repayment of the $20,670.30.

GSA received no response to its letter. Consequently, on September 1, 2006, the contracting officer issued a final decision asserting that the government was entitled to recover from plaintiff $20,670.30 and demanding repayment of that amount. Thereafter, the government took a credit in the amount of $20,670.30 against money that it otherwise owed to plaintiff.

Following receipt of the contracting officer's final decision, plaintiff made several attempts, both in writing and by telephone, to explain to the contracting officer and to GSA auditors the basis upon which the government's share of the real estate taxes had been calculated. Although the government responded on several occasions with requests for additional information, nothing came of plaintiff's efforts.

On July 19, 2007, plaintiff once again wrote to GSA in an attempt to resolve the tax liability issue. Plaintiff explained its position as follows:

> This matter began in July 2006 at which time the GSA wrote to my client and indicated it would be taking a credit of $20,670.30 for what it perceived was an overpayment of real estate taxes. My client disputed this and on September 1, 2006 the GSA again wrote a letter to my client restating its intention to take a credit of $20,670.30. Since that time, not only has the GSA taken a credit of $20,670.30, but it has refused to pay any of the real estate taxes billed per the Lease Agreement.

* * * * *

> If I do not hear from you by Monday, July 23, 2007 and we cannot work out a suitable resolution of this matter, I will proceed to protect my client's rights by taking all action permitted to the landlord pursuant to the Lease Agreement.

In response to this letter, GSA's assistant regional counsel telephoned plaintiff's counsel on July 26, 2007, to discuss the possible settlement of the dispute. During their conversation, plaintiff's counsel expressed interest in settling the dispute but advised that plaintiff intended in any event to file a complaint by September 1, 2007, in order to protect its rights. As recited in an affidavit by plaintiff's counsel, GSA's counsel responded "that this would not be necessary, and that the GSA would extend [plaintiff's] time to file a complaint for ninety (90) days in order to allow settlement discussions to take place." In a letter dated that same day, GSA's counsel further advised:

> As I indicated to you in our conversation today, GSA will transmit a letter to you next week proposing a settlement of the dispute in the above captioned matter. . . .
>
> In accordance with our conversation, I hereby agree, on behalf of GSA, that if we have been unable to execute a supplemental lease agreement resolving this matter by September 5, 2007, that the time for Metrotop Plaza Associates to appeal the final contracting officer's decision . . . dated September 1, 2006 shall be deemed extended to December 5, 2007 without any additional action or writing by your client.

Approximately one month later, on August 21, 2007, the contracting officer sent a settlement proposal to plaintiff indicating that the government would allow the 2001 tax year to be used as the base year for tax adjustments (a position the government had previously rejected), subject, however, to a reduction in the occupancy percentage used to calculate the government's share of the building's space (thereby reducing the government's share of future tax increases). Pursuant to this approach, the contracting officer proposed a payment to plaintiff for tax years 2003 through 2006 of $7,675.99.

Plaintiff did not accept this proposal. Accordingly, on October 30, 2007, plaintiff submitted a claim to the contracting officer asserting that the sum due from the government for tax years 2003 through 2007 was $114,772.34. Although plaintiff maintains that it sent the claim by both regular and certified mail, with return receipt requested, the contracting officer never received either mailing and plaintiff's counsel never received the return receipt confirming delivery of the certified mailing to the contracting officer. It was thus not until early December 2007 that the

contracting officer first became aware of plaintiff's claim. Upon learning of the outstanding claim, GSA requested a copy and plaintiff resubmitted the claim by e-mail on December 13, 2007.

In the meantime, on November 19, 2007, plaintiff filed what is now the first count of the instant complaint addressing only the matter set forth in the contracting officer's decision of September 1, 2006. Thereafter, on January 30, 2008, plaintiff filed a supplemental complaint adding what is now the second count of the complaint. The second count focuses on what is alleged to be a "deemed" denial by the contracting officer of the claim plaintiff mailed on October 30, 2007, and then resubmitted on December 13, 2007.

## DISCUSSION

Defendant seeks dismissal of both counts of the complaint for lack of jurisdiction. Defendant argues that neither count was filed here within the time allowed by the CDA and hence, neither may be heard by this court.

In support of its argument, defendant points out that Count I of the complaint—challenging the contracting officer's decision of September 1, 2006—was not filed here until November 19, 2007, more than fourteen months after the decision's issuance and therefore beyond the twelve-month limitations period specified in section 609 of the CDA. ("Any action [brought directly on the claim in the United States Court of Federal Claims] shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim . . . ." 41 U.S.C. § 609(a)(3).) Defendant thus argues that Count I must be dismissed as out of time.

Similarly, defendant notes that Count II—challenging the contracting officer's deemed denial of plaintiff's resubmitted claim of December 13, 2007—was filed here on January 30, 2008, twelve days short of the statutory sixty-day period necessary to qualify a contracting officer's inaction on a claim as a "deemed" denial under section 605 of the CDA. ("Any failure by the contracting officer to issue a decision on a contract claim within [sixty days of receipt of a submitted certified claim] will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of . . . suit on the claim . . . ." 41 U.S.C. § 605(c)(2), (5).) Defendant thus characterizes Count II as premature.

Plaintiff disagrees with these contentions. Regarding Count I, plaintiff contends that the contacts it initiated with the government beginning immediately following issuance of the contracting officer's September 1, 2006, final decision were intended to demonstrate to the contracting officer that the tax increases billed to GSA

had in fact been correctly calculated and that no overpayment had therefore occurred. Plaintiff maintains that these contacts, although never formally identified as a request for reconsideration, were nevertheless intended for that very purpose, i.e., to convince the contracting officer that a reexamination of the government's position was warranted. Plaintiff further contends that the contracting officer's letter of August 21, 2007, proposing a settlement of the tax issue does in fact reflect a departure from the contracting officer's previous views on the subject and thus may legitimately be seen as a decision issued upon reconsideration, i.e., a new decision that supplants the prior final decision. Pursuant to this reasoning, then, the filing here of Count I on November 19, 2007, was timely.

In support of this analysis, plaintiff cites Arono, Inc. v. United States, 49 Fed. Cl. 544 (2001), in which the court ruled that the finality of the contracting officer's decision was suspended pending the contracting officer's evaluation of materials submitted by the contractor seeking reconsideration of the decision. The court explained its reasoning as follows:

> Where a plaintiff timely submits a request for reconsideration, the time for appeal under the CDA does not commence until the disposition of the request for reconsideration because "such a request suspends the finality of the decision pending a ruling on the application . . . ." Vepco of Sarasota, Inc. v. United States, 26 Cl. Ct. 639, 645 (1992), aff'd, 6 F.3d 786 (Fed. Cir. 1993) (internal quotations omitted) (quoting Precision Piping, Inc. v. United States, 230 Ct. Cl. 741, 743 (1982) (quoting Dayley v. United States, 169 Ct. Cl. 305, 309 (1965)).

Id. at 549.

Defendant does not dispute the legitimacy of the rule applied in Arono but challenges its applicability to the instant case. Defendant points out that in Arono, the court specifically noted that suspension of the finality of a contracting officer's decision requires both a determination that the contractor had actually sought reconsideration as well as a determination that the contracting officer had recognized the request. Defendant maintains that neither of these requirements has been satisfied here: plaintiff never requested reconsideration and the contracting officer never addressed plaintiff's contacts as though they constituted such a request. According to defendant, then, Arono offers no legal basis for concluding that the twelve-month period allowed for the filing of a suit challenging the contracting officer's final decision of September 1, 2006, should be measured from some later date.

Although defendant is correct in saying that plaintiff never formally labeled its contacts with the government as a request for "reconsideration," we do not find the absence of that term to be legally significant. What matters, instead, is whether the efforts that plaintiff pursued to engage the government in discussions regarding the tax issue after receipt of the contracting officer's final decision could substantively be viewed as a request for reconsideration and, correspondingly, whether the contracting officer could reasonably have understood that such a request was plaintiff's purpose. The answer to each of these inquiries is yes. Plaintiff's efforts to demonstrate to the government the correctness of the invoiced tax increases was necessarily a request for reconsideration: there could be no other business purpose for such an undertaking.

Similarly, when the government responded to plaintiff with an offer to settle the tax dispute, it was necessarily acknowledging a willingness to reexamine the contracting officer's earlier views. Indeed, GSA's offer to extend the period for appeal of the contracting officer's decision of September 1, 2006, may reasonably be understood as a suspension of the finality of that decision pending settlement discussions. Reconsideration, in other words, was implicit in the offer to discuss settlement. All in all, then, we think it is fair to say that the contracting officer's letter of August 21, 2007, proposing a compromise to the parties' dispute reflects reconsideration of the contracting officer's prior decision of September 1, 2006, and thus, sets a new time marker for pursuing further relief in this court. We conclude, therefore, that Count I of plaintiff's complaint, filed here on November 19, 2007, was timely filed.

Turning to Count II of the complaint, plaintiff contends that proof of the timely submission of a claim to the contracting officer does not require proof of the contracting officer's actual physical receipt of the claim. Rather, plaintiff maintains, under the case law established in this court, a claim shown to have been correctly addressed and properly mailed to the contracting officer is presumed to have been received by the contracting officer. Plaintiff would have us apply such a rule here.

The cases upon which plaintiff relies, however—United Partition Sys., Inc. v. United States, 59 Fed. Cl. 627 (2004); Flying Horse v. United States, 49 Fed. Cl. 419 (2001); and Wallace O'Connor Int'l, Ltd. v. United States, 23 Cl. Ct. 754, 758 (1991)—do not stand for the proposition for which plaintiff cites them. Rather, these cases hold that submission of a claim to the contracting officer does not require actual physical delivery; it is enough that the claim has been received by an agency official who, in turn, has the responsibility for transmitting the claim to the contracting officer.

Such a rule does not fit here. We have no facts that would allow us to conclude that GSA ever received plaintiff's claim, much less that it was an intra-

agency error that caused the claim not to be properly routed to the contracting officer. Moreover, as defendant points out, the very notion of a proper mailing must be doubted here for, according to a document included as part of defendant's reply brief, the United States Postal Service has no record whatsoever of the tracking number that would allegedly confirm the processing of plaintiff's certified mailing.

In the absence, then, of evidence that the contracting officer received notice of plaintiff's claim before December 13, 2007, we cannot conclude that the 60-day period had expired to transform the contracting officer's inaction into a deemed denial. We thus hold that Count II, filed here on January 30, 2008, was premature and, hence, beyond our jurisdiction.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss Count I of the complaint as untimely is denied. Defendant's motion to dismiss Count II as premature, however, is granted on the ground that it was filed here less than 60 days after receipt of the claim by the contracting officer.

s/John P. Wiese
John P. Wiese
Judge